**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-cv-10159

NICOLE SOHN and
LINDA BAGLEY-SOHN,

*Plaintiffs*,

v.

CITY OF KEY WEST,

*Defendant*.
_________________________/

# COMPLAINT

1. Plaintiffs exercised their First Amendment right to sue the City of Key West for selectively enforcing its municipal code against them in a discriminatory manner. In response, the City took the comparator evidence Plaintiffs presented in that lawsuit, opened code enforcement cases against those properties, and falsely informed Plaintiffs' neighbors that the cases were opened because Plaintiffs submitted code violation complaints to the City.

2. In doing so, the City exposed Plaintiffs to reputational harm, instigated friction with their neighbors, and sent a chilling message to all who might challenge the City's selective enforcement, announcing: *if you sue us, we will punish your community and falsely identify you as a code-complaining snitch*. The First Amendment forbids the City from exacting such a price for seeking redress in court.

3. Nor does the First Amendment permit what the City did next. Plaintiffs demanded the City stop misrepresenting them as having submitted code violation complaints. Rather than accede to the truth, the City scoffed at Plaintiffs' demand and responded that it would continue falsely identifying Plaintiffs as the complainants unless and until they withdraw the factual allegations supporting their pending constitutional claim.

4. The City thus attempted to force Plaintiffs to choose between presenting evidence needed to support their pending lawsuit and protecting their relationships and reputation in their community.

5. Plaintiffs reject the City's unlawful ultimatum. They once again bring suit to vindicate their rights under the First Amendment.

## I. PARTIES, JURISDICTION, AND VENUE

6. Plaintiffs Nicole "Coley" Sohn and Linda Bagley-Sohn own a house in Key West's Historic District, where they live.

7. Defendant City of Key West is a Florida municipality.

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §§ 1983 and 1988, because this action arises under the Constitution and laws of the United States.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides here and a substantial part of the events giving rise to the claim occurred here.

## II. FACTUAL ALLEGATIONS

### A. Plaintiffs engaged in protected petitioning.

10. On May 7, 2026, Plaintiffs sued the City of Key West in this Court (the "First Suit," No. 26-cv-10040). The First Suit alleged that the City violated Plaintiffs' First Amendment rights when it selectively enforced Key West's Historic District regulations against them because of the communicative content and viewpoint of their expression.

11. A brief summary of the First Suit's allegations is as follows:

a. Plaintiffs protested the City's removal of rainbow crosswalks—installed years ago to celebrate Key West's LGBTQ+ community—by painting in rainbow colors several of the pickets on their white picket fence.

b. Plaintiffs' rainbow protest display inspired other Key West locals to similarly paint their own pickets in rainbow colors; more than 50 such displays were painted in Key West's Historic District since the crosswalks' removal.

c. The City enforced its Historic Architectural Review Commission (HARC) regulations against Plaintiffs' rainbow protest, and against most, if not all, of the more than 50 other rainbow picket displays in the Historic District.

d. But the City chose *not* to cite noncompliant properties that express different messages. Numerous fences and other exterior structures in the Historic District are clearly out of compliance with the same regulations cited against Plaintiffs—including by having colorful fences and gates—but these other violations have not faced enforcement.

e. The City selectively and arbitrarily enforced its Historic District regulations against Plaintiffs because of the communicative content and viewpoint of their rainbow

display and has not enforced the regulations against others similarly situated whose violations have different communicative content and viewpoints from Plaintiffs. The City's selective enforcement therefore violated the First Amendment.

12. In support of their selective enforcement allegations, Plaintiffs alleged how the "non-compliance [of similarly situated properties] is as wide-ranging as it is well-known to the City; selective enforcement against rainbow pickets has been an ongoing topic of discussion, debate, and public comment at both City Commission and HARC meetings dating back to November 2025."

13. Plaintiffs illustrated that point with photographs of "a few of the non-white wooden fences and gates that, on information and belief, the City has evidently chosen not to cite, despite evidently also violating the HARC Guidelines," as well as examples of other exterior violations.

14. Plaintiffs identified 21 examples of apparently noncompliant fences, gates, and similar exterior features in the First Suit solely as comparator evidence supporting their allegation that the City enforced its regulations selectively based on content and viewpoint.

15. Plaintiffs did not ask the City to initiate enforcement against any of those properties and did not submit a code violation complaint concerning any of them.

16. The First Suit remains pending in this Court.

**B. The City converted Plaintiffs' litigation evidence into code violation complaints attributed to Plaintiffs.**

17. Sometime on or before August 11, 2026, the City's legal counsel provided the City's Code Enforcement Department with the list of comparator properties described in the First Suit and directed the Department to treat the federal litigation as if it were a code violation complaint reported by Ms. Sohn and Ms. Bagley-Sohn.

18. On August 11, the City's Code Enforcement Department opened 21 code violation cases in Plaintiffs' names.

19. For each opened case, City staff identified Plaintiffs as the complaining parties in the official case record, including through entries stating: "RECEIVED COMPLAINT FROM NICOLE SOHN AND LINDA -BAGLEY SOHN [sic] OF [Plaintiffs' address]" and "I received a complaint from Nicole Sohn & Linda Bagley- Sohn [Plaintiffs' address]." Those entries were false: neither Plaintiff had filed a code violation complaint concerning the property.

20. The same day, the City's Code Enforcement Director, Christopher Counsellor, referred the cases for investigation to other Code Enforcement staff by email, stating: "I received

a complaint from Nicole Sohn & Linda Bagley- Sohn" followed by Plaintiffs' home address. One of those emails attached Plaintiffs' complaint from the First Suit.

21. Upon information and belief, after receiving the new cases from Mr. Counsellor, code enforcement staff had concerns and questions about whether treating the properties described in Plaintiff's Complaint as a code violation complaint attributed to Ms. Sohn and Ms. Bagley-Sohn was appropriate or legal. The staff was advised that opening code enforcement cases in Ms. Sohn and Ms. Bagley-Sohn's names—as Mr. Counsellor directed—would violate Florida law.

22. The code violation notices that City staff delivered to the properties included a notation that the violation was "COMPLAINT DRIVEN"—i.e., the result of a citizen's code violation complaint (from Ms. Sohn and Ms. Bagley-Sohn), rather than from an investigation the City took of its own initiative.

23. On August 17, 2026, Ms. Sohn received a call from a neighbor whose property had been subjected to City code enforcement. The neighbor stated that City staff told her that the enforcement was because Ms. Sohn and Ms. Bagley-Sohn had complained of the neighbor's violation. Believing that Plaintiffs had filed a code violation complaint about her property, the neighbor was upset with Plaintiffs and confronted Ms. Sohn about it.

24. On August 18, Ms. Sohn went to Key West City Hall to investigate the City's actions. There, she met with Mr. Counsellor to determine why Plaintiffs had been identified as complainants.

25. Mr. Counsellor told Ms. Sohn, in effect, that "Legal" had given him a list of properties identified in the First Suit and directed him to treat such identification as code violation complaints submitted by Plaintiffs. He further stated that the City's outside attorneys had likewise directed Plaintiffs' federal complaint be treated as a code violation complaint.

26. Mr. Counsellor confirmed that the City had initiated or was initiating enforcement concerning properties discussed in the First Suit and was representing to affected property owners that Plaintiffs had filed a code violation complaint with the City.

### C. The City continues the false attribution after receiving notice that Plaintiffs never submitted code violation complaints.

27. Later on August 18, Plaintiffs' counsel sent the City a cease-and-desist letter, attached as **Exhibit A**, explaining that:

a. Plaintiffs had identified the comparator properties solely as evidence supporting their First Amendment selective enforcement claim;

b. neither Plaintiff had submitted a code violation complaint concerning any of those properties;

c. City records and communications were falsely identifying Plaintiffs as the persons who reported the properties;

d. at least one affected property owner had been led to believe that Plaintiffs personally reported her property; and

e. converting Plaintiffs' litigation evidence into code violation complaints attributed to Plaintiffs constituted retaliation for their protected petitioning activity.

28. Plaintiffs demanded that the City stop identifying them as complainants, correct or annotate the affected records, notify affected property owners of the false attribution, identify the persons responsible for the directive, and stop using the First Suit as purported code violation complaints submitted by Plaintiffs.

29. On August 21, the City rejected Plaintiffs' demand and expressly confirmed that it was treating the First Suit as code violation complaints submitted by Plaintiffs. The City stated: "The Plaintiffs then served the City with the Complaint putting it on notice of their complaints regarding the allegedly existing violations of the HARC Guidelines." The City's response is attached as **Exhibit B**.

30. The City further stated that it had "correctly identified the Plaintiffs as the source of the complaints" and that, "[g]iven that the City's code compliance is complaint driven, the City was obligated to act once the Plaintiffs provided their Complaint." The City did not cite any legal authority for its position.

31. The City conditioned cessation of the retaliatory enforcement on Plaintiffs' abandonment of factual allegations supporting the First Suit. Specifically, the City demanded that Plaintiffs confirm they no longer contended the comparator properties violated the HARC Guidelines, withdraw those allegations, and state that they did not want the City to enforce the HARC Guidelines. The City stated that otherwise it "intend[ed] to continue acting on the information provided to it by the Plaintiffs."

32. Thus, even after Plaintiffs notified the City that it was falsely stating that Plaintiffs were complaining about their neighbors' properties and that they had never submitted code violation complaints, the City refused to correct the false attribution and threatened to continue it unless Plaintiffs withdrew evidence supporting their pending constitutional claim.

33. The code enforcement cases remain identified in City records as having been initiated by Plaintiffs, and the City has not notified the affected property owners that Plaintiffs did not submit the complaints.

34. The City's August 21 response conclusively establishes that it intends to continue to open code enforcement cases based on Plaintiffs' use of comparator evidence in its lawsuit and falsely inform Plaintiffs' neighbors that Plaintiffs are requesting the City do so unless Plaintiffs abandon factual allegations supporting the First Suit.

35. Discovery in the First Suit is ongoing, and Plaintiffs expect to identify additional comparator evidence as the First Suit progresses. Through its false attributions, the City has forced Plaintiffs into a retaliatory Hobson's choice: either prove their claims in the First Suit, continue presenting comparator evidence and accept that the City will initiate enforcement against the identified property owners while blaming Plaintiffs; or refrain from presenting evidence necessary to support their constitutional selective enforcement claim.

36. The City's conduct has already prompted at least one neighbor to confront Plaintiffs and creates an ongoing risk of harm to Plaintiffs' relationships and reputation within their neighborhood. Many of the apparent violations Plaintiffs presented as comparator evidence in the First Suit have existed for years without issue. Key West residents value creative expression, including through painting their fences, gates, and houses. By falsely identifying Plaintiffs as code violation complainants, the City exposed them to anger, hostility, and damaged relationships with members of their community.

37. The City's conduct also burdens Plaintiffs' ability to identify and present additional comparator evidence as the First Suit proceeds.

38. The City's conduct would deter a person of ordinary firmness from filing or maintaining a civil rights action against the City, identifying comparator evidence in that action, or otherwise seeking judicial redress for the City's constitutional violations.

**D. Plaintiffs did not submit code violation complaints against the comparator properties.**

39. Plaintiffs filed the First Suit to obtain judicial relief from the City's selective enforcement against their property. They identified other properties solely as comparator evidence supporting that constitutional claim.

40. The City identifies seven methods by which a person may report a municipal code violation on its website:

(1) "come to City Hall between 8:00 AM and 5:00 PM Monday through Friday";

(2) "file a complaint with the City";

(3) "call Code Enforcement";

(4) "e-mail a complaint";

(5) "submit a request through our See Click Fix app";

(6) "call (305) 809-3740 and leave a message"; or

(7) "call the Key West Police Department at (305) 809-1000."

*Code Enforcement*, https://www.cityofkeywest-fl.gov/273/Code-Enforcement.

41. Filing a federal lawsuit against the City in which comparator evidence is presented to support a First Amendment selective enforcement claim is *not* one of the City's designated methods of reporting a code violation.

42. Plaintiffs did not use any method to report the comparator properties identified in the First Suit because they did not request enforcement against those properties.

43. Florida law prohibits initiating enforcement proceedings by way of an anonymous complaint and requires a person who reports a potential code violation to provide the person's name and address before complaint-initiated enforcement may proceed. Fla. Stat. §§ 162.06(1)(b), 162.21(3)(b). Plaintiffs did not submit a report concerning the comparator properties or provide their names and address to the City for that purpose. (Indeed, the complaint in the First Suit does not provide Plaintiffs' address at all.)

44. Nothing in the First Suit represented that Plaintiffs were submitting municipal code violation complaints or requesting that the City initiate enforcement against their neighbors.

45. Plaintiffs' cease-and-desist letter further ensured the City knew that Plaintiffs were not complaining about their neighbors' properties or filing code enforcement complaints. The City nevertheless falsely designated Plaintiffs as complainants and refuse to correct this intentional falsehood.

46. Although the City could independently investigate information appearing in the First Suit, Plaintiffs' identification of comparator properties as litigation evidence did not make Plaintiffs code violation complainants or provide a factual basis for representing that Plaintiffs had affirmatively filed code violation complaints to Code Enforcement.

**E. The retaliatory conduct is attributable to the City.**

47. The challenged conduct resulted from an official directive transmitted by the City's

legal counsel to Mr. Counsellor, the City official responsible for code enforcement.

48. Mr. Counsellor implemented that directive through official City records, departmental case assignments, investigations, notices, and communications with affected property owners.

49. After Plaintiffs notified the City that they had never submitted any code violation complaints, the City defended the decision to identify Plaintiffs as complainants and stated that it would continue acting on that decision unless Plaintiffs withdrew their allegations supporting the First Suit.

50. The directive, its implementation by Mr. Counsellor, and the City's knowing adoption and continuation of the conduct constituted an official City decision and caused, and continues to cause, the violation of Plaintiffs' First Amendment rights.

## CLAIM FOR RELIEF

### First Amendment Retaliation
### (42. U.S.C. § 1983)

51. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint.

52. The First Amendment generally "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).

53. Plaintiffs' First Suit was First Amendment-protected activity. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) ("The First Amendment right to petition the government for a redress of grievances includes a right of access to the courts." (quotation omitted)).

54. Filing and maintaining the First Suit, seeking judicial redress for alleged constitutional violations, and presenting comparator evidence in support of that action are activities protected by the First Amendment.

55. Because Plaintiffs engaged in those protected activities, the City converted the comparator evidence in the First Suit into code violation complaints attributed to Plaintiffs, initiated enforcement cases against Plaintiffs' neighbors in Plaintiffs' names, and falsely communicated or caused the false communication to affected property owners that Plaintiffs had

complained about their properties.

56. After receiving actual notice that Plaintiffs had never submitted those code violation complaints, the City refused to correct the false attribution and stated that it would continue the challenged conduct unless Plaintiffs withdrew factual allegations supporting the First Suit.

57. The City's actions would likely deter a person of ordinary firmness from filing or maintaining a similar civil-rights action, presenting comparator evidence against the City, or otherwise seeking judicial redress.

58. The City's actions were substantially motivated by Plaintiffs' protected activity, as demonstrated by the City's use of the First Suit itself as the asserted basis for the code cases and its demand that Plaintiffs withdraw allegations from the First Suit as the condition for stopping its false statements that Plaintiffs were filing code enforcement complaints against their neighbors.

59. The City's official directive, its implementation through its staff, and its knowing adoption and continuation of the conduct caused the deprivation of Plaintiffs' First Amendment rights.

60. As a direct and proximate result, Plaintiffs have suffered and continue to suffer reputational harm, damaged community and neighbor relationships, litigation-related burdens, and other compensable injuries.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court enter judgment in their favor and:

A. Declare that the City violated Plaintiffs' First Amendment rights by converting evidence presented in the First Suit into code violation complaints falsely attributed to Plaintiffs and by continuing that conduct unless Plaintiffs withdrew allegations supporting the First Suit;
B. Enjoin the City from identifying either Plaintiff as a complainant or reporting person concerning any property unless that Plaintiff actually submitted the code enforcement complaint;
C. Award Plaintiffs compensatory damages in an amount to be determined at trial;
D. Award Plaintiffs reasonable attorneys' fees and costs; and
E. Grant any other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted September 9, 2026,

*/s/ Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
Samantha J. Past (FBN 1054519)
Michelle M. Morton (FBN 81975)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
spast@aclufl.org
mmorton@aclufl.org
dtilley@aclufl.org

Reid Levin (FBN 1038933)
**Reid Levin, PLLC**
P.O. Box 880682
Boca Raton, FL 33488
(561) 866-6089
reid@reidlevinpllc.com

Ashley N. Sybesma (FBN 22059)
Wayne LaRue Smith (FBN 31410)
**The Smith Law Firm**
509 Whitehead Street
Key West, FL 33040
(305) 296-0029
ashley@thesmithlawfirm.com
wsmith@thesmithlawfirm.com

*Counsel for Plaintiffs*

# <u>Exhibit A</u>

## Plaintiffs' Cease-and-Desist Letter
## (Aug. 18, 2026)

REID LEVIN, PLLC

August 18, 2026

**Via Email**

Hudson C. Gill, Esquire
W. Hampton Johnson IV, Esquire
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Suite 1000
Ft. Lauderdale, FL 33304
Ph: 954-463-0100
hgill@jambg.com
whjohnson@jambg.com
mccarthy@jambg.com
Ostruemke@jambg.com

**Re: Cease-and-Desist and Demand to Correct False Attribution of Code Enforcement Complaints**

To Whom It May Concern:

We write as counsel to Nicole Sohn and Linda Bagley-Sohn, together with Bagley-Sohn Trust 04/23/2021 as Plaintiffs in the ongoing litigation *Nicole Sohn, et al. v. City of Key West*, in the U.S. District Court for the Southern District of Florida, Case No. 4:26-cv-10040. This Letter raises serious concerns regarding City's attribution of multiple Code Enforcement complaints to our clients even though neither client submitted, authorized, nor intended to submit any such complaint.

We have now learned that multiple Code Enforcement matters concerning properties identified in Plaintiffs' federal Complaint have been attributed to Nicole Sohn and Linda Bagley-Sohn as the complainants. Neither Nicole Sohn nor Linda Bagley-Sohn has ever submitted or authorized a Code Enforcement complaint concerning those properties. Nevertheless, their names and address have been associated with the resulting Code Enforcement matters, causing at least one affected property owner to believe that our clients personally reported her property to the City.

This morning, Nicole Sohn personally went to the City's Code Enforcement Department to determine how this occurred. According to Code Enforcement Director Chris Counsellor, the City Attorney's Office provided Code Enforcement with a packet containing the addresses identified in Plaintiffs' federal Complaint and instructed Code Enforcement to treat that material as a Code Enforcement complaint by Nicole Sohn and Linda Bagley-Sohn. Mr. Counsellor further

advised that the City's outside counsel likewise directed that the Complaint be treated as a Code Enforcement complaint.

On May 7, 2026, our clients filed a federal lawsuit asserting a constitutional claim under the First Amendment against the City for selectively enforcing its Historic District regulations. While their Complaint discusses some properties that are in apparent violation of the HARC Guidelines, these are references used only as evidence to demonstrate the City's selective enforcement as to their *own* property. ECF No. 1 at 4–9 ("While the City eagerly enforced its Historic District regulations against Plaintiffs' colorful protest, it has chosen *not* to cite noncompliant properties that express different messages.") The properties were identified for one purpose: to support Plaintiffs' allegation that the City selectively enforced its Historic District regulations. Identification of comparator properties as evidence in adversarial litigation against the City is not the submission of a Code Enforcement complaint against those property owners.

The City itself identifies the methods by which a person may report a Code violation. As the City's own Code Enforcement website[1] explains:

> There are several methods to report a violation. You can come to City Hall between 8:00 AM and 5:00 PM Monday through Friday. You can file a complaint with the City, call Code Enforcement, e-mail a complaint, or submit a request through our See Click Fix app. The office at City Hall is closed after 5:00 PM and on weekends and holidays. However, to report a possible code violation when the office is closed, call (305) 809-3740 and leave a message or call the Key West Police Department at (305) 809-1000.

Our clients employed none of those methods. Nor did they otherwise communicate an intent to report these properties for enforcement.

The distinction matters under Florida law. Section 162.06(1)(b) of the Florida Statutes provides that a person who reports a potential violation must provide his or her name and address to the local government before complaint-initiated enforcement may occur. *See also* Fla. Stat. § 162.21(3)(b). The City may, of course, independently investigate conditions that come to its attention and initiate enforcement based upon a Code inspector's own investigation where authorized by law. *See* Fla. Stat. §§ 162.06(1)(a), 162.21(3)(a). But nothing in those statutory provisions authorizes the City to convert evidence presented by adverse litigants into complaints purportedly made by those litigants, and then identify those litigants as the persons who reported the violations. The conduct described above therefore raises serious concerns under sections 162.06(1)(b) and 162.21(3)(b).

[1] https://www.cityofkeywest-fl.gov/273/Code-Enforcement.

The First Amendment concerns are equally serious. Plaintiffs' filing of their federal lawsuit and their use of comparator properties to support their constitutional claims are protected petitioning activity. *See Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018). If, as Mr. Counsellor reported, City officials deliberately converted that litigation evidence into Code Enforcement complaints attributed to Plaintiffs, resulting in enforcement against their neighbors and causing those neighbors to believe Plaintiffs initiated the complaints, that conduct raises substantial concerns of retaliation for Plaintiffs' exercise of their First Amendment rights. *See Bennett v. Hendrix*, 423 F.3d 1247, 1254–55 (11th Cir. 2005).

The false attribution has also caused reputational harm to our clients and may give rise to additional state law claims, all of which are expressly reserved.

**Accordingly, we demand that the City immediately cease identifying Nicole Sohn or Linda Bagley-Sohn as complainants in any Code Enforcement matter unless either client has actually made or authorized such a complaint. We further demand that the City promptly:**

**(1) identify every Code Enforcement complaint, referral, investigation, Good Neighbor Courtesy Notice, Notice of Violation, citation, or other matter in which either client has been identified as a complainant or reporting person;**

**(2) correct or appropriately annotate each affected City record to make clear that neither client submitted or authorized the complaint, while preserving the original record as required by applicable public-records and retention law (*See* Fla. Admin. Code R. 1B-24.003);**

**(3) provide written corrective notice to each affected property owner who was informed, directly or through City records, that either client reported the property;**

**(4) identify the City personnel or agents who directed that Plaintiffs' federal Complaint be treated as Code Enforcement complaints and the basis for that direction; and**

**(5) cease any further use of Plaintiffs' federal Complaint as a purported citizen complaint submitted by Plaintiffs.**

The City and its counsel are further directed to preserve all documents and electronically stored information concerning these matters, including the packet provided to Code Enforcement, communications among the City Attorney's Office, outside counsel, City management, and Code Enforcement, Code Enforcement database entries and audit histories, complaint intake records, photographs, emails, text messages, SeeClickFix records, metadata, and any documents reflecting how or why Plaintiffs were identified as complainants. This preservation demand encompasses both existing records and associated metadata or audit information showing when entries were created, modified, or attributed to particular users.

Given the ongoing reputational harm and the possibility of additional enforcement activity, please confirm by **noon on Friday, August 21, 2026**, that the City has ceased further attribution

of complaints to our clients and advise what corrective action the City will take. Nothing in this letter waives any claim, remedy, argument, or request for relief available to Plaintiffs in the pending federal action or otherwise, all of which are expressly reserved.

Sincerely,

Nicholas L.V. Warren (FBN 1019018)
Samantha J. Past (FBN 1054519)
Michelle M. Morton (FBN 81975)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
spast@aclufl.org
mmorton@aclufl.org
dtilley@aclufl.org

Reid Levin (FBN 1038933)
**Reid Levin, PLLC**
P.O. Box 880682
Boca Raton, FL 33488
(561) 866-6089
reid@reidlevinpllc.com

Ashley N. Sybesma (FBN 22059)
Wayne LaRue Smith (FBN 31410)
**The Smith Law Firm**
509 Whitehead Street
Key West, FL 33040
(305) 296-0029
ashley@thesmithlawfirm.com
wsmith@thesmithlawfirm.com

# Exhibit B

## City's Response to Cease-and-Desist Letter (Aug. 21, 2026)

LAW OFFICES

**JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.**

A PROFESSIONAL ASSOCIATION

DAMIAN H. ALBERT, P.A.
SCOTT D. ALEXANDER, P.A.
SELENA A. GIBSON, P.A.
HUDSON C. GILL, P.A.
JEFFREY L. HOCHMAN, P.A.
E. BRUCE JOHNSON *
MELISSA L. JOHNSON, P.A

* BOARD CERTIFIED CIVIL TRIAL LAWYERS

2455 EAST SUNRISE BOULEVARD
SUITE 1000
FORT LAUDERDALE, FL 33304

(954) 463-0100 Broward

TELECOPIER (954) 463-2444

W. HAMPTON JOHNSON IV, P.A.
MICHAEL R. PIPER *
JONATHAN H. RAILEY, P.A.
CHRISTOPHER J. STEARNS, P.A.
NICHOLAS A. STEARNS
MARIELA E. TKACIK

RETIRED:
RONALD P. ANSELMO
ROBERT E. MURDOCH
MICHAEL T. BURKE

August 21, 2026

Reid Levin, Esq.
Reid Levin, PLLC
P.O. Box 880682
Boca Raton, FL 33488
(561) 866-6089
reid@reidlevinpllc.com
Via Email Only

**Re: The August 18, 2026, "Cease-and-Desist" Letter from Reid Levin, Esq.**

Mr. Levin:

Please allow this correspondence to serve as the response to your August 18, 2026, "Cease-and-Desist" letter, wherein you contend that the City of Key West ("City") improperly attributed "multiple Code Enforcement complaints to [y]our clients even though neither client submitted, authorized, nor intended to submit any such complaint."

Your contention regarding the lack of any complaint by your clients is incorrect. Nicole Sohn and Linda Bagley-Sohn ("Plaintiffs") filed a complaint ("Complaint") in federal court in which they identified approximately 20 properties ("Identified Properties") in the City's historic district that they believe are in violation of the City's Historic Architectural Guidelines ("Guidelines"). *See* ECF No. 1 at ¶¶ 44, 45, and 47. The Plaintiffs characterize the Identified Properties as being "out of compliance with" and "violating" the Guidelines. *Id.* at ¶¶ 37, 44. In the Complaint, they also complain that the City has not enforced the Guidelines against the Identified Properties. *Id.* at pgs. 4-9. The Plaintiffs then served the City with the Complaint putting it on notice of their complaints regarding the allegedly existing violations of the Guidelines.

Based on the information the Plaintiffs provided to the City, the City investigated the alleged violations, commenced code enforcement proceedings where appropriate, and correctly identified the Plaintiffs as the source of the complaints. Given that the City's code compliance is complaint driven, the City was obligated to act once the Plaintiffs provided their Complaint, which put the City on notice of alleged existing violations of the Guidelines.

If the Plaintiffs no longer contend that the Identified Properties violate the Guidelines and now wish to withdraw their complaints, please confirm in writing (1) that the Plaintiffs no longer

contend that the Identified Properties are in violation of the Guidelines, (2) that the Plaintiffs withdraw any assertion that the Identified Properties violate the Guidelines, and (3) that the Plaintiffs do not want the City to enforce the Guidelines against the Identified Properties. Otherwise, the City intends to continue acting on the information provided to it by the Plaintiffs.

Very truly yours,

Hudson C. Gill
For the Firm

CC: Nicholas L.V. Warren, Esq. (via email only)
Samantha J. Past, Esq. (via email only)
Michelle M. Morton, Esq. (via email only)
Daniel B. Tilley, Esq. (via email only)
Ashley N. Sybesma, Esq. (via email only)
Wayne LaRue Smith, Esq. (via email only)